PEOPLE, PLAINTIFF AND APPELLEE, *v.* RIVERA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for Violation of Section 137 of the Penal Code.

No. 1142.—Decided July 27, 1917.

OFFENSE AGAINST PUBLIC JUSTICE—DESTRUCTION OF MILK INTENDED FOR SALE—
    OBSTRUCTING PUBLIC JUSTICE.—When upon the approach of an official charged
    by law with the duty of inspecting milk to ascertain whether it is of the
    degree of purity required by law, a person engaged in the sale thereof to

the public maliciously and wilfully destroys the milk, a part of which he had already sold, thus preventing the said official from fulfilling his duties, he is guilty of the offense of obstructing public justice, penalized by section 137 of the Penal Code.

The facts are stated in the opinion.

*Mr. Enrique Campillo* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The information, in so far as pertinent, reads as follows:

"In San Juan, of the judicial district of the same name, the said Antero Rivera, on or about the 28th day of October, 1916, being the owner of the milkstand situated at No. 20 San Sebastián Street, unlawfully, wilfully and maliciously obstructed Ramón Martinó, the lawfully appointed food inspector of the Department of Sanitation of Porto Rico, in the performance of his duties, knowing him to be acting officially, in that upon being asked for a sample of milk for analysis by the said Martinó in the fulfilment of his duties, the defendant poured out on the ground the milk contained in a demijohn and two bottles, that in the demijohn being intended for sale and that in the two bottles having been already sold."

The statute applicable to the case reads as follows:

"Every person who wilfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by fine not exceeding five thousand (5,000) dollars, and imprisonment in jail not exceeding one year." Sec. 137, Penal Code.

Defendant pleaded guilty to the charge as laid and was sentenced to pay a fine of fifty dollars or in default of payment to serve one day in jail for each dollar not paid. From the said judgment he appealed to this court, but has not filed a bill of exceptions or statement of the case.

Does the act with which the defendant is charged constitute the offense defined and penalized by the statute transcribed?

If section 137 is considered alone, there is no doubt that the question should be answered in the affirmative. Every person who wilfully obstructs *any public officer* in the dis-

charge or attempt to discharge any duty of his office is guilty of the said offense. And the information clearly charges the defendant with having wilfully obstructed a public officer in attempting to discharge the duties of his office.

The doubt arises in considering the position of section 137 of the Penal Code. The title under which it appears in said code treats of "Crimes Against Public Justice" and is divided into five chapters, as follows: (1) "Bribery and Corruption"; (2) "Forging, Stealing, Mutilating, and Falsifying Judicial and Public Records and Documents"; (3) "Perjury"; (4) "Falsifying Evidence"; (5) "Other Offenses Against Public Justice." Section 137 is included in Chapter V.

Examining the decisions of the courts with reference to provisions similar to those contained in section 137, it will be observed that they are all based upon acts having a direct relation to the administration of justice. Generally the cases involve resistance of public peace officers in making arrests or of court officers in executing lawful judicial orders. See 29 Cyc., pp. 1325–39, and cases cited.

But does this mean that the words "any public officer" employed by the Legislature of Porto Rico should be limited to officers whose duty it is to arrest citizens or execute the orders of the courts? By no means, we think. We agree that the spirit of section 137 is to insure the proper administration of public justice, but the idea of public justice, whose administration is vested in the courts, has many ramifications. And the fact that a person engaged in the sale of an article of food like milk, upon the approach of an officer charged by law with the duty of inspecting such article in order to ascertain whether it is of the degree of purity required by law, maliciously and wilfully destroys the article which he had for sale and a part of which he had already sold, thus preventing the official from performing his duties and obtaining the necessary information in order to determine whether or not an offense had been committed, clearly constitutes, in

our opinion, an obstruction of public justice. The sanitary inspector in such a case was one of the officers whom the Legislature had in mind in enacting section 137 of the Penal Code.

A case which throws much light on this question is that of *Fryon* v. *Pingree* (Michigan), reported at 37 L. R. A. 222, in which it was held that "an obstruction of an executive officer in the exercise of his lawful right to examine the books of a city officer for a proper purpose is an indictable offense." After repeating the charge of the trial court the Supreme Court of Michigan said:

"We must assume that the provision of the charter of Detroit, authorizing the mayor to examine the books of the fire commissioners at all times (Charter of Detroit, chap. 16, sec. 24, 353), was designed to promote the public interest, by securing honesty and accuracy in the management of the affairs of the department under the control of the fire commissioners. Any obstacle that should be unlawfully interposed to prevent such an examination for a proper purpose would be an obstruction of the functions of government, and indictable as such at the common law. It is said that the offense of obstruction of officers is confined to court officers, bailiffs, etc., and does not extend to officers who have to do with executive duties, as contradistinguished from those having judicial functions, and those who are charged with the enforcement of judicial mandates, conservators of the peace, etc., and that no case can be found where one has been convicted of such an offense. This does not necessarily imply that acts constituting an obstruction of government are not indictable at common law, and we should be reluctant to hold that acts of trespass, not otherwise criminal, would not become criminal if the object and effect were to prevent the governor or legislators or other State officers from performing the duties pertaining to their respective departments. We cannot think that the mother country, which punished seditious libels and slanders, would have tolerated acts which actually interrupted official action; and it is possible that the English law would justify the conclusion that such an act would be punishable as a contempt against the King's prerogative, by a fine and imprisonment, at the discretion of the King's court of justice. 4 Bl. Com. p. 122. Mr. Bishop, in dealing with the question, has no apparent hesitancy in saying that the ob-

struction of governmental functions is criminal, where the act is of sufficient magnitude to deserve notice. 1 Bishop, Crim. L. sec. 457. He says that 'of natures akin to treason, yet of inferior rank, are the various obstructions of the governmental machinery. The leading ones have been particularized in this chapter, but all other obstructions of the like sort and magnitude are common-law offenses.' It is fair to say that he adds: 'Practically, the law of this chapter is greatly circumscribed by the rule that it does not notice small things.' *Id.* sec. 480. Just where the line is which marks the limit of crime, and separates it from the realm of 'small things which the law does not punish,' is hard to say; but we are impressed with the gravity of an act which prevents executive officers of the nation, State, or cities from performing the duties of their offices." 37 L. R. A. p. 225.

It has also been said that in order to commit the offense under consideration it is necessary that a certain degree of force or violence be employed by the offender in its commission. This would be true if the statute referred only to resistance, but besides the word "resistance" it includes the words "delay" and "obstruct," and this alters the case.

"Where the statute limits the offense to resistance alone, it must appear that the accused was personally present and resisted the officer's execution of process by more or less forcible means. Hence, while it is enough that the officer was prevented by the exercise of personal violence on the part of the accused, yet mere threats, unless accompanied by a present ability and apparent intention to execute them, do not constitute the offense. But where the statute denounces wilful acts of obstruction, as well as of resistance, its violation is established by proof that the accused caused any impediment or hindrance to be interposed to the execution of the process, although not personally present and actually co-operating in the act of obstructing. It must appear, however, that the accused in some manner and at some stage aided or abetted the act of obstructing.

"If the statute denounces resistance alone, it contemplates that execution of the process shall be prevented by the exercise of direct means, and it is not violated by indirectly defeating and circumventing the officer in the execution of process, as where property is concealed or removed. But where the statute denounces also wilful acts of obstruction, the employment of direct means is not nec-

essarily implied, and it is violated whenever execution ·of process is prevented by interposing indirect or circuitous impediments.'' 29 Cyc. 1329.

In view of all the foregoing, we are of the opinion that the judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf dissented.